UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAUL DAVIS,

    Plaintiff,

v.

WINGS TWENTY-SIX, INC.,
JASON GARRITY, and
ERIC FRIESNER,

    Defendants.
_____/

Case No. 16-11763
HON. DENISE PAGE HOOD

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [#14]
and DENYING PLAINTIFF'S MOTION FOR
LEAVE TO FILE A FIRST AMENDED COMPLAINT [#17]**

**I.    INTRODUCTION**

*Pro se* Plaintiff filed this action on May 18, 2016, alleging that Defendants discriminated against him on the basis of his race, in violation of The Civil Rights Act of 1991 (42 U.S.C. § 1981) and the Michigan Elliott-Larsen Civil Rights Act (M.C.L. § 37.2101, *et seq.*). On March 24, 2017, Defendants filed a Motion for Summary Judgment. [Dkt. No. 14] Plaintiff did not file a response to Defendants' Motion for Summary Judgment prior to the hearing held on June 21, 2017. Plaintiff appeared at a June 21, 2017 hearing, and the Court granted Plaintiff the opportunity to file a response after the hearing. Plaintiff filed a response on June 28, 2017, and Defendant

1

filed a reply on July 7, 2017.

On April 24, 2017, Plaintiff filed a Motion for Leave to File and Serve a First Amended Complaint on Consent or with Leave of the Court ("Motion for Leave"). [Dkt. No. 17] Defendants filed a response to Plaintiff's Motion for Leave, and Plaintiff did not filed a reply. The Court held a hearing on Defendants' Motion for Summary Judgment and Plaintiff's Motion for Leave on June 21, 2017. On July 5, 2017, Plaintiff filed a Motion for Rule 11 Sanctions. [Dkt. Nos. 25/26] Defendants filed a timely response to Plaintiff's Motion for Rule 11 Sanctions. The Court, having concluded that the decision process would not be significantly aided by oral argument, orders that the Motion for Rule 11 Sanctions be resolved on the motion and briefs submitted by the parties. E.D. Mich. L.R. 7.1(f)(2).

For the reasons that follow, the Court grants the Motion for Summary Judgment and denies the Motion for Leave and the Motion for Rule 11 Sanctions.

**II. BACKGROUND**

Plaintiff, an African-American male, worked for Defendant Wings Twenty Six, Inc. (d/b/a Buffalo Wild Wings) (hereinafter "BWW") in Ann Arbor, Michigan, from February 2014 until he was terminated in April 2016. In addition to working at the Ann Arbor BWW, Plaintiff had worked intermittently at two other BWW restaurants owned by BWW's parent company, JK&T Wings, Inc. ("JK&T Wings"), since 2005.

2

Defendants Jason Garity (general manager) and Eric Friesner (manager) were Plaintiff's direct supervisors at the Ann Arbor BWW during Plaintiff's employment term at that restaurant. Joel Dover was the regional manager of JK&T Wings when Plaintiff's employment at BWW ceased.

Plaintiff worked as a server and bartender at the Ann Arbor BWW, and he was a "certified trainer," which meant that he also trained other BWW employees. To become a "certified trainer," he had to demonstrate extensive knowledge of BWW's and JK&T Wings' employee handbook, policies, practices, and operations. The Employee Handbook for BWW and JK&T Wings employees provides, in part:

> In order to ensure the safety of our employees and customers, the Company strictly prohibits the possession, use or being under the influence of alcohol, drugs and controlled substances on Company premises or while on Company business. Actions such as, but not limited to, the following are prohibited . . . The use, possession, transfer or trafficking of such intoxicants . . . in any manner during work hours . . . [or] on Company property.

[Dkt. No. 14, Ex. 5 at 34] According to Dover, employees also are prohibited from leaving the restaurant with alcohol. [Dkt. No. 14, Ex. 1 at ¶ 4] Plaintiff acknowledges having received the Employee Handbook and understanding the policies in it, which he had to in order to be a certified trainer. [Dkt. No. 14, Ex. 2 at 24, 27-28; Ex. 6]

On Sunday morning, April 17, 2016, Plaintiff departed the Ann Arbor BWW's after working the closing shift. When he left the restaurant to get into his car, it is

3

undisputed that he took a "to go" cup with him, and the "to go" cup contained beer. [Dkt. No. 14, Ex. 2 at 51 and 54] Friesner observed Plaintiff's conduct and, though he believed that Plaintiff's actions violated BWW policies, he did not state anything to Plaintiff because Friesner was not responsible for employee discipline. [Dkt. No. 14, Ex. 4 at ¶ 4] At his deposition, Plaintiff stated that he had engaged in the same conduct (taken a "to go" cup with beer in it) "pretty regular[ly]." [Dkt. No. 14, Ex. 2 at 59] Plaintiff states that he does not know whether Defendant (or any Defendant employee) was aware that Plaintiff engaged in that conduct prior to April 17, 2016, and Defendants deny any such knowledge. [Dkt. No. 14, Ex. 2 at 59; Ex. 3 at ¶ 7; Ex. 4 at ¶ 5]

On April 18, 2016, Friesner informed Garrity of Plaintiff's conduct, and Friesner and Garrity reviewed security camera footage that showed Plaintiff pouring a beer into a "to go" cup. Garrity and Friesner then contacted Dover and shared that information with Dover. Dover states that he made the decision to discharge Plaintiff for violating BWW's policies against leaving the restaurant with alcohol. On April 21, 2016, Garrity and Friesner met with Plaintiff, informed Plaintiff that he was discharged and the reason for discharge, and gave Plaintiff a Performance Counseling Record that he signed. [Dkt. No. 14, Ex. 2 at 51-52, Ex. 7]

Pursuant to an affidavit, Dover states that he has discharged at least three other

employees for the same conduct (leaving a BWW restaurant with alcohol in a "to go" cup): (1) Sean B., from the BWW Ann Arbor restaurant; (2) Ryan S., from another BWW restaurant; and (3) Tony C., from another BWW restaurant. All three of those former BWW employees are Caucasian. Sean B. and Ryan S. held similar positions and performed substantially the same job duties as Plaintiff, and Tony C. was a manager. Dover asserts that BWW and JK&T Wings discharge all employees reported leaving their restaurants with alcohol.

The Court finds that Plaintiff has not offered any <u>evidence</u> to refute the evidence submitted by Defendants. Plaintiff testified at his deposition that Friesner said the word "n-----" in Plaintiff's presence but not directly to Plaintiff. [Dkt. No. 14, Ex. 2 at 81] Plaintiff also testified that Friesner was joking when he said it. *Id.* Plaintiff testified that no one made any racially discriminatory comments in conjunction with Plaintiff's termination. *Id.* at 61.

### III. APPLICABLE LAW

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

### A. Motion for Summary Judgment

Under both Section 1981 and ELCRA, direct evidence of discrimination requires "direct proof that the discriminatory animus was causally related to the

adverse employment decision." *Gibbs v. Voith Indus. Servs., Inc.*, 60 F.Supp.3d 780, 791 (E.D. Mich. 2014) (citing *Sniecinski v. BCBSM*, 469 Mich. 124 (2003)). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 3137 F.3d 564, 570 (6th Cir. 2003). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

Defendant argues that there is no direct evidence of discrimination in this case because no one made any discriminatory comments in conjunction with Plaintiff's termination. There is nothing in Plaintiff's response brief or the pages of Plaintiff's deposition testimony supplied to the Court, nor did Plaintiff offer any evidence at the June 21, 2017 hearing, that supports a finding of direct evidence of discriminatory animus causally connected to his termination.

In the absence of direct evidence of discrimination, a *prima facie* Section 1981 or ELCRA race discrimination claim can be established based on circumstantial evidence. Section 1981 and ELCRA claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework.[1] *See, e.g., Aquino*

---

[1] *McDonnell Douglas Corp. v. Green*, 411 US. 792 (1973).

7

*v. Honda of Am., Inc.*, 158 F. App'x 667, 676 (6th Cir. 2005) (applying *McDonnell Douglas* standard to claims under Section 1981); *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 695 (1997) (applying *McDonnell Douglas* to claims under the ELCRA).

Under *McDonnell Douglas*, a plaintiff has the burden of establishing a *prima facie* case. A *prima facie* Section 1981 or ELCRA case demands that Plaintiff be able to show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) similarly situated employees outside the protected class who were treated more favorably. *See, e.g., White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).

Once a plaintiff has established a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action against the plaintiff. *McDonnell Douglas*, 411 U.S. at 805. Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805.

Defendant concedes that Plaintiff can establish the first three elements of a *prima facie* Section 1981 or ELCRA case but argues Plaintiff cannot satisfy the fourth

element. Defendant maintains that there are no similarly situated Caucasian employees who were not terminated for committing the same offense. Defendant has submitted the affidavit of Dover, who stated that he has terminated three Caucasian employees with similar (or greater) duties for leaving a BWW restaurant with alcohol in a "to go" cup, as Plaintiff did. Dover also represents that, when management is aware that an employee has left a BWW restaurant with alcohol in a "to go" cup, BWW terminates that employee. For those reasons, Defendant contends that the undisputed facts show that Plaintiff was treated exactly the same as similarly situated Caucasian employees.

Plaintiff has not offered any evidence to contradict Defendant's assertions. Defendant's motion for summary judgment is granted because Plaintiff has failed to offer any <u>evidence</u> that any similarly situated Caucasian (or other non-African American) BWW employee was not terminated for leaving a BWW restaurant with alcohol in a "to go" cup (if Defendant had knowledge that the employee did so).

Even if Plaintiff offered evidence of a similarly situated non-African American BWW employee who was not terminated for leaving a BWW restaurant with alcohol in a "to go" cup, the Court finds that Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant has represented that Plaintiff was terminated for leaving the Ann Arbor BWW restaurant with alcohol in

9

a "to go" cup. Plaintiff has acknowledged doing so and that such conduct violates BWW policy.

To overcome Defendant's legitimate, non-discriminatory reason for termination, Plaintiff has to show that the reason had no basis in fact, did not actually motivate the decision to terminate, or was insufficient to motivate the termination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Frizzell v. Southwest Mtr. Freight*, 154 F.3d 641 (6th Cir. 1998). Plaintiff acknowledged that there was a basis in fact for Defendant to take action – that Plaintiff left the Ann Arbor BWW with alcohol in a "to go" cup. Plaintiff has not shown how his actions did not actually motivate Defendant's decision to terminate him or why his conduct was not sufficient to motivate Defendant to terminate him.

The Court grants Defendant's Motion for Summary Judgment.

**B.** **Motion for Leave**

Plaintiff seeks to amend his Complaint to add Dover as a Defendant. Plaintiff suggests that he learned of Dover's involvement when reviewing Defendants' Motion for Summary Judgment (March/April 2017). Plaintiff maintains that Dover should be added under the "rubber-stamp" or "cat's paw" theory of liability. Citing *Arendale v. City of Memphis*, 519 F.3d 587, 604, n.13 (6th Cir. 2008) ("When an adverse hiring or [firing] decision is made by a supervisor who lacks impermissible bias, but that

supervisor was influenced by another individual who was motivated by such bias, . . . the employer may be held liable under a 'rubber-stamp' or 'cat paw' theory of liability.").

Defendants respond that Plaintiff has known about Dover's role in Plaintiff's discharge since April 21, 2016, when Plaintiff was discharged at his meeting with Friesner and Garrity. [Dkt. No. 21, Ex. 1 at 55 (revealing that Garrity told Plaintiff that Garrity and Friesner had talked to "Joel," the regional manager about terminating Plaintiff)]  Defendants also note that "Joel Dover" was identified in its interrogatory answer dated January 30, 2017, which it provided in response to Plaintiff's interrogatory about who participated in the decision to discharge Plaintiff. [Dkt. No. 21, PgID 238-69, Ex. 3]  For those reasons, Defendants assert that Plaintiff's Motion for Leave, filed over two months after the close of discovery, was not filed timely but instead reflects undue delay.

Defendants next contend that Plaintiff's desired amendment is futile because Plaintiff has stated that he has no idea if Dover ever discriminated against him and no such evidence has been produced. [Dkt. No. 21, Ex. 1 at 64 ("Q.  Do you think that Joel Dover ever discriminated against you? A.  I wouldn't – I wouldn't know. I don't – I never really had contact with Joel.").  Dover averred that he did not consider Plaintiff's race when making the decision to terminate Plaintiff's employment. [Dkt.

11

No. 14, Ex. 1 at ¶ 7]

For the reasons stated by Defendants – and the reasons for granting Defendants' Motion for Summary Judgment, the Court denies Plaintiff's Motion for Leave as untimely and futile. As with the previously named Defendants, Plaintiff has not produced any evidence that establishes a *prima facie* case of discrimination by Dover.

**C.    Motion for Rule 11 Sanctions**

After the Court held the June 21, 2017 hearing and all of the briefing had been filed regarding the Motion for Summary Judgment and the Motion for Leave, Plaintiff filed his Motion for Rule 11 Sanctions. Federal Rule of Civil Procedure 11 requires pleadings to be based on reasonable inquiry and supported by evidence. Rule 11(b)(3) provides:

> By presenting to the court a pleading … an attorney certifies that the best of the person's knowledge, information, and belief, formed after an inquiry reasonably under the circumstances [that]:
>
> the factual contentions have evidentiary support …

In the Sixth Circuit, "the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances." *Ridder v. Springfield,* 109 F.3d 288, 297 (6th Cir. 1997). Rule 11 is intended "to require litigants to 'stop-and-think' before initially making legal or factual contentions." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Revision). Rule 11 "emphasizes the duty of candor

12

by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a possible violation is called to her attention." *Id.*

Plaintiff first argues that Defendants failed to include the complete deposition of Plaintiff in support of their summary judgment motion. This argument lacks any merit. Defendants did not have an obligation to attach a compete copy of Plaintiff's deposition transcript to their Motion for Summary Judgment; they only had to submit the portions of his deposition that supported their arguments.

Plaintiff next contends that Defendants identified two persons as similarly situated who, Plaintiff now argues, are not similarly situated or relevant because they worked in a different department. Even if the Court assumes that Plaintiff's contention is accurate, Defendants' statements regarding those two persons constitute nothing more than argument, not anything improper. Defendants' suggestion that those two persons were similarly situated to Plaintiff is something that Plaintiff had the opportunity to create a genuine dispute of material fact through the introduction of evidence; Plaintiff did not offer any such evidence.

Finally, Plaintiff argues that Defendants' objections to Plaintiff's First Set of Interrogatories and Requests for Production of Documents were made in bad faith and

were disingenuous. Plaintiff contends that, because Plaintiff copied Defendants' interrogatories and requests for production to Plaintiff, Defendants had no basis to object to the interrogatories or requests for production submitted by Plaintiff. Plaintiff's argument is misplaced. If Plaintiff believed that Defendants' objections to his discovery requests were improper, he could have raised – and was obligated to challenge – those issues with Defendants' counsel or with the Court during the discovery period. The discovery period closed over four months before Plaintiff filed his Motion for Rule 11 Sanctions and after the parties had briefed and argued Defendants' Motion for Summary Judgment.

Accordingly, the Court finds that Plaintiff has not demonstrated that any of pleadings filed by, or the conduct of, Defendants' counsel was not reasonable under the circumstances. The Court concludes that Plaintiff's Motion for Rule 11 Sanctions lacks merit and must be denied.

## V. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Dkt. No. 14] is **GRANTED**. Judgment shall be entered accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File and Serve a First Amended Complaint on Consent or with Leave of the Court [Dkt. No.

17] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Rule 11 Sanctions [Dkt. No. 25/26] is **DENIED**.

IT IS ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: December 19, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 19, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager